# IN THE UNITED STATES DISTRICT COURT
## FOR THE EASTERN DISTRICT OF NEW YORK

| | |
|---|---|
| **JESSICA WILLIS**<br>10970 Cameron Court, #306<br>Davie, FL 33324, | )<br>)<br>)<br>) |
| **KIMBERLY NEADING**<br>122 S. Branch Lane<br>Hesperia, MI 49421, | )<br>)<br>)<br>) |
| **HEIDI LAMEYER**<br>14561 Furman Street<br>Forest Lake, MN 55025, | )<br>)  **CLASS ACTION COMPLAINT**<br>)<br>)  **Jury Trial:    Yes** |
| **ALICE CRUTCHER**<br>1107 Elmwood Street<br>Knoxville, TN 37914, | )  Case No.: 1:18-cv-04552<br>)<br>)<br>) |
| **MARLA FRANK**<br>3 First Street<br>Roberts, MT 59070, | )<br>)<br>)<br>) |
| **LISA ANDERSON**<br>1650 Shady Lane<br>Bellingham, WA 98226, | )<br>)<br>)<br>) |
| **MEAGHAN KEENOY**<br>4530 Crestmont Drive<br>Charlotte, NC 28205, | )<br>)<br>)<br>) |
| **JOY FRISBY**<br>265 West Madison Street<br>Monticello, FL 32344, | )<br>)<br>)<br>) |
| **SARAH CORNELL**<br>17191 Caloosa Trace Circle<br>Fort Meyers, FL 33967, | )<br>)<br>)<br>) |
| **MARCIA CONNELL**<br>PO Box 1014<br>Lake City, CO 81235, | )<br>)<br>)<br>) |

**CYNTHIA CHARETTE**          )
48 Cherry Hill Road           )
Norwich, CT 06360,            )
    **v.**                       )
                                    )
**EXCELSIOR COLLEGE**         )
7 Columbia Circle             )
Albany, New York 12203        )
                                    )
      Defendant.              )
_____ )

## CLASS ACTION COMPLAINT
## AND DEMAND FOR JURY TRIAL

COME NOW THE PLAINTIFFS, on behalf of themselves and on behalf of similarly-situated others, complain against the Defendant and allege the following:

### Nature of The Case

The Plaintiffs are forced to file this action against the Defendant, because Excelsior's fraud has been insistent, persistent and unending.

Although Excelsior has publicly admitted that it "knew there was a problem" with defrauding consumers in the Associate Degree in Nursing ("ADN") program, it has continued with the fraud because of the "reluctance to lose the revenue."

After it was sued in 2014, Excelsior promised to remove from its website false and misleading statements. Excelsior has intentionally and maliciously continued to make untrue statements about its pass rates and its accreditation. Excelsior also knew that consumers could not possibly achieve their degree within a promised time frame because over 10,000 consumers are enrolled in the nursing program, Excelsior accepts new enrollees, and only less than 10% of its consumers graduate annually. Thousands of Excelsior consumers wait to take the final program test, but there are only a dozen testing sites in which to take the test!

2

Excelsior's President has finally admitted: **"[w]e knew there was a problem there, but there was a reluctance to lose the revenue."** __Exhibit 1__, Page 5, Admission No. 12. Excelsior does not have a legal right to defraud consumers so that it does not lose the revenue.

Excelsior's persistent deception constitutes common law fraud, consumer fraud, and a material breach of Plaintiffs' contracts with Excelsior.

## Jurisdiction and Venue

1. Jurisdiction is proper in this Court, and is founded upon 28 U.S.C. § 1332(d)(2)(A). The Defendant is a corporation, which is domiciled in the State of New York. The representative Plaintiffs are citizens of the various United States.

2. Venue in this judicial district is proper in that the Defendant operates a testing center at the New York Medical Center Hospital of Queens, Flushing, New York, where it administers the CPNE in a manner that violates the law as the Plaintiffs allege herein.

## Factual Allegations

3. The Plaintiffs bring this action, *inter alia*, to address fraud and deception in the form of misrepresentations and omissions made by Defendant Excelsior College ("Excelsior" or "EC") in connection with its Associate Degree in Nursing ("ADN") program. While Excelsior has an easy admissions policy, graduating from the ADN program is difficult by design. Of 10,432 individuals attending Excelsior's Associate Nursing program, only 718 individuals were said to have graduated in 2017, according to College Navigator.

4. Excelsior willfully lies to consumers as to the final test's pass rate. For example, whereas the actual CPNE pass rate for 2017 was only 39.5% (__Exhibit 1__, Page 7, Admission No. 19), Excelsior misled and continues to mislead consumers into believing that the pass rate is and has been 62.2%. In fact, while the average pass rate is actually below 47% for the past five years,

Excelsior falsely insisted that the pass rate was "62.2%." After Excelsior was sued in 2017, Excelsior removed the fraudulent posting, and when requested to admit to the false posting, Excelsior pled ignorance:

> "the website and data has undergone numerous iterations and therefore [Excelsior] cannot, at this time, definitively state whether or not that language has ever appeared on its website." **Exhibit 1**, Page 7, Admission No. 18.

5. Excelsior knew beyond the shadow of a doubt that the above-quoted fraudulent posting appeared on its web site. In approximately six months, Excelsior caused the false posting to disappear and falsely claimed that it cannot find it. In that posting Excelsior falsely stated that "[b]etween **Fiscal Years 2013 and 2017** (July 2012 – June 2017), a total of 6,640 individual students attempted the CPNE and **62.2% passed the CPNE** by June 30, 2017."

6. Even as this lawsuit is being filed with the Court, Excelsior insists that the final test's pass rate is 62%. On the website this day, Excelsior states:

> "Between October 2017 and March 2018, 806 students attempted the CPNE with a  pass rate of 62%."
> https://www.excelsior.edu/about/transparency/nursing

7. Excelsior needs to mislead consumers as to the test results for two reasons: it wishes to continue to enroll more victims under false pretenses and to make a fraudulent test appear valid. Indeed, Excelsior's own "criterion" for measuring student learning is that the final test's "overall pass rate will be 65% or greater." Not surprisingly, this quoted language also disappeared from Defendant's website.

8. No Plaintiff would ever enroll in a program where the pass rate for the final test is less than 50%. The CPNE pass rate for 2017 is 39.5%, but Excelsior has not reported this rate to the public.

9.   Excelsior's fraud does not stop at misrepresenting the final test's pass rate.  Excelsior omits from consumers the fact that its accreditation with the Accreditation Commission for Education in Nursing ("ACEN") is "with conditions."

10.   Perhaps, the most significant intentional fraud committed by Excelsior relates to a wait period for taking the final test.  At the time of enrollment, consumers are informed that they can expect to finish the nursing component of the program at "your own pace," and within "18 months."  But, Excelsior knows that these statements are not true.

11.   Over 10,000 students are enrolled in the nursing program and, upon information and belief, thousands nationwide are accepted into the program annually.  Excelsior only has a dozen sites to conduct the weekend testing.  https://www.excelsior.edu/schools/nursing/cpne/finding-a-test-site. There are only 52 testing weekends in the year, and only approximately 1,200 consumers test annually.  Excelsior graduates less than 10% of its enrollees annually.   The simple math confirms that Excelsior's intentional representation that the wait time for taking the CPNE "is three-five months" was known to be false when it was made.

12.   In truth and in fact, consumers wait over a year to take the final test, not three-five months.

13.   Even when inquiries are individually made, Excelsior's representatives misrepresent the pass rate and the wait periods to consumers.

14.   No Plaintiff would ever enroll in the program if they knew that the wait time is longer than the 3-5 months.

15.   In addition to the fact that the final test does not meet Excelsior's own "criterion," the test itself is administered fraudulently where the "nationally-recognized faculty" of Excelsior has particularized methods of failing consumers using: the patient identification game, the word

game, the time game, the documentation game, the pulse game, the bubble in the injection game, the turning of the faucet game, the syringe size and the syringe in the sharps games, the blood pressure game, the equipment game, among numerous other time-honored ways.   Excelsior admits that it provides no teaching during this "clinical."  Instead, Excelsior's Examiners follow consumers with clipboards waiting for the latter to make errors.  When consumers fail, they return to take the final test for an additional $2,300.

16.   The named Plaintiffs in this action are citizens of the United States who reside in Connecticut, Colorado, Florida, Michigan, Minnesota, North Carolina, Montana, Tennessee, and Washington.

17.   Excelsior represents publicly that Excelsior is a private entity, headquartered in Albany, New York, which purports to provide distance educational services to consumers nationwide in the area of nursing, among other degrees.   The overwhelming majority of Excelsior's consumers are within Defendant's nursing program.  Of 19,646 consumers enrolled with Excelsior, 15,249 are in the nursing program of the Defendant.

18. All of the fraudulent activities relevant to the alleged violations of law, and the breach of contract, committed by Excelsior occurred in New York.  Excelsior's advertising is/was created in New York and is/was transmitted via the Internet from New York.  The admissions and enrollment policies were created and developed in New York.  Although the Defendant has enrollment and application links on its webpage online, it has a hotline where consumers call to Excelsior's headquarters for questions regarding admissions.  Defendant makes and receives telephone calls to and from consumers in its New York Headquarters. The fraudulent CPNE was created in New York.  The Defendant also has a "live chat" where consumers interact - live -with Excelsior in New York.

19.  Upon information and belief, all of Defendant's "Admission Advisors" communicate out of hotlines/telephone lines that are in New York, and the Defendant maintains an 800 number in New York where it purports to answer consumers' calls regarding nearly every conceivable area of its admissions and enrollment operation.  All of the employment decisions relating to the hiring and firing of Defendant's examiners (CEs and CAs) are made in New York. The Bursar's Office of the Defendant is located in New York.   The Registrar's Office is also located in New York and so is Defendant's Human Resources Offices.

20.  All of Defendant's Officers are based in Excelsior's Headquarters in New York. Excelsior Officers interact with and make presentations to state boards nationwide seeking expansion and program acceptance.  All of the alleged fraud, deception and the violations of the General Business Law were committed by the Defendant out of its New York headquarters, including the development of the various policies and procedures for Defendant's CPNE.

21. Although Defendant holds itself as a "college," Excelsior's primary function is not the presentation of instruction.  Indeed, the United States District Court for the Northern District of New York has found as to the Excelsior program that:*"[t]here are no teachers, no classrooms, and no clinical training."  Excelsior College v. Frye*, 306 F. Supp. 2d 226 (2004); *See* also *Excelsior College v. N.Y. State Ed. Dep't*, 306 A.D.2d 675; 761 N.Y.S.2d 700; 2003 N.Y. App. Div. LEXIS 6655, (noting that Excelsior's "external degree program *does not provide education.*")

22.  The Defendant misleads the Plaintiffs and the public as to its status, which depicts the Defendant as an altruistic educational organization, when, in fact, it is a company whose sole purpose and motivation is profit.

23.   At all relevant times herein, the Defendant claimed that, with its "student-friendly" nursing degree programs, "you can [w]ork with nationally recognized faculty" and "[b]enefit from personalized advising." The Defendant declared that it could improve the consumer's "job security, and your earning power."

24.   The Defendant claims to provide an associate's degree in nursing to working individuals.   Typically, the Defendant makes it attractive for Plaintiffs and other consumers to enroll in Excelsior by informing them that EC would accept transfer credits.   The consumers would then enroll, paying a registration fee, and later learn that they obligated themselves to pay an annual registration fee of approximately $500.00.   The Defendant has an interest in expanding the number of years in which a consumer is enrolled and allows a consumer to obtain a nursing degree in as long as 7 years.

25.   Excelsior targets consumers who are hardworking LPNs, LVNs, paramedics and veterans who lead busy life styles and are unable to attend a brick-and-mortar nursing school. Excelsior represents to the targeted consumers that the latter's nursing/paramedic background will make it easy for them to complete Defendant's nursing program.   Excelsior tells the targeted consumers that they can finish the nursing component of the program in as little as 18 months.

26.   Excelsior intentionally withholds specific information from consumers regarding the final, mandatory, CPNE test.   When consumers ask, Excelsior misrepresents that there are testing sites available for consumers to take the CPNE within a few months of becoming CPNE eligible. Typically, Excelsior and its representatives state to consumers that the wait period for the end-of-the-program test is three to five months.   Once enrolled, Excelsior engages in delay tactics such as limiting the number of courses that a consumer can take.   This is designed to prolong the program, since Excelsior earns $495 each year that a consumer is held back in the program.

27.   Excelsior deliberately fails to inform the targeted consumers that there are not enough testing sites for the thousands of those enrolled to take the CPNE.  After the consumers have spent thousands of dollars on courses, Excelsior admits that the wait time is as long as over one year.

28.   The Defendant never discloses to consumers and potential consumers its ADN program's annual graduation rate, which is less than 10%.

29.   Excelsior represents to consumers in connection with its estimate of costs that: "Most of our students complete the associate degree program in two years."  With Excelsior controlling the number of courses that can be taken, with typically eight nursing courses that must be taken, and with a year-long wait period for the final test, this representation is false.

30.   Excelsior has consistently provided misleading CPNE pass rates. As part of a class action lawsuit filed in 2014, Excelsior committed to remove from its website the misleading information.  Notwithstanding its commitment to remove the misleading information, Excelsior placed the following statement on its website:

"Between **Fiscal Years 2013 and 2017** (July 2012 - June 2017), a total of 6,640 individual students attempted the CPNE and **62.2% passed the CPNE** by June 30, 2017."

31.   Shortly after Excelsior was sued in 2017, Excelsior removed the false information contained in the above Paragraph, and it claimed that it cannot determine whether the false statement was on its website.

32. During the relevant time period, the Defendant falsely represented that the CPNE provides "[*a] carefully controlled and monitored examination experience that insures a fair and objective assessment of your knowledge and skill*."

33. The Plaintiffs are not informed that education in the form of workshops will cost them extra money.

34. Excelsior failed to inform consumers that credits, for nursing courses taken with Excelsior, are not transferrable to other educational institutions.

35. The Defendant completely controls the design, the administration and the outcome of the CPNE without the policing, or assurance of neutrality, by a detached third party of the exam-taking process. Among the false impressions that Excelsior gives to consumers is that the CPNE is "External[ly] reviewed," but some, if not all, of the reviews are prepared under contract for Excelsior.

36. Excelsior does not "bank" the portions of the CPNE, which the consumers pass on their first attempt. Instead, it requires each consumer to retake the entire exam, which adds pressures on the consumers and creates for more opportunities for failing the consumers and extracting new fees.

37. A failure of the CPNE causes Plaintiffs to be placed on academic probation, and Excelsior encourages Plaintiffs to retake the CPNE, again, to raise their grade point average, but the motive is for the consumer to pay another $2,300. Moreover, immediately after a Plaintiff is failed by Excelsior at the testing site, Excelsior's Examiners encourage Plaintiffs to retake the CPNE, which means yet another payment to Excelsior of $2,300. Encouraging consumers to retake the CPNE is done out of a concern for profit, not for the victimized consumer. Excelsior cleverly conceals the pass rate information and the wait time information until consumers have invested too much into the program and they are irreversibly committed.

38. Plaintiff Jessica Willis is a resident of the State of Florida. She has been an LPN since 2010. The Plaintiff enrolled with Excelsior in February of 2015 after Excelsior represented

that the nursing program is educational, it is self-paced and is designed for consumers with nursing or paramedic background.  The Plaintiff understood that the entire program would be completed in 18 months.  Excelsior completely concealed from the Plaintiff the fact that the final mandatory test, which costs $2,300, has an average pass rate of less than 50%.  Excelsior falsely represented to Ms. Willis that the mandatory CPNE would be taken in 3 months from the time of the application.  The Plaintiff would never have enrolled had she known that the pass rate for the CPNE was less than 50%, and she would never have enrolled had she known that Excelsior was lying about the wait period.  The Plaintiff relied on the false statements, and she received a job offer, which was "contingent upon her having an active RN license by July 2018."  The Plaintiff took the deceptive CPNE test in Queens, New York in April of 2018.  As is the case with the overwhelming majority of consumers, Excelsior failed this Plaintiff with the sole motive of profit in mind.  Seven people, including the Plaintiff, took the CPNE on the week in April of 2018, and all seven of them were failed by Excelsior.  The further evidence of the deception of the program and the test is that after failing Ms. Willis, Excelsior acknowledged that the failure was wrongful noting that "the exam administration was [not] in accordance with established protocols." Although Excelsior acknowledged the wrongful failure of the Plaintiff, it refused to issue her the deserved pass, which would enable her to accept the job offer.  As a result of the wrongful failure and Excelsior's fraud, the Plaintiff received a letter terminating her from her position.  The letter stated: "[w]e base this decision on the fact that you did not complete your RN degree in the specified time frame."  In addition to losing her job, the Plaintiff lost funds incurred in loans in the amount of $29,512.  The Plaintiff has also suffered emotional harm as a result of Excelsior's deceptive practices.

39.   Plaintiff Kimberly Neading is a resident of the State of Michigan.  She graduated from Muskegon Community College as an LPN in 2002.  The Plaintiff enrolled with Excelsior in 2013 unaware that the pass rate for the CPNE, for the prior year, was merely 46%.  The Plaintiff would never have enrolled with Excelsior had she been aware of the true CPNE pass rate. Excelsior also withheld from the Plaintiff the fact that the wait time for the CPNE was at least one year.  The Plaintiff would not have enrolled with Excelsior had she known of the wait time. The Plaintiff was working as an Allied Health Instructor with the Muskegon Area Career Tech Center, and she needed an RN degree to pursue her Interim Occupational Certification, which she needed to remain in her position.   The Plaintiff took the CPNE in Chambersburg, Pennsylvania, in October of 2016, along with six (6) other consumers.  Not one of the consumers taking the test, or the Plaintiff, passed the CPNE during the weekend of the test.  As a result of Excelsior's failing of the Plaintiff, Ms. Neading lost her position, which paid her $53,000. Excelsior also hid from Plaintiff the fact that a change in Excelsior's Study Guide varied the nature of the already-subjective CPNE, and this gave the Examiners additional reason to fail consumers.  With the change in the Study Guide, the impending delay of at least one year, and the loss of her position, which was caused by a fraudulent test, the Plaintiff was forced to leave the deceptive program losing thousands of dollars on credits that would never transfer.  Ms. Neading learned that the credits earned through Excelsior's fraudulent "testing program" would not transfer to any educational institutions.  In addition to losing her position, the Plaintiff also lost significant wages, funds expended in connection with Defendant's program, in addition to the extreme emotional distress she endured and continues to suffer.

40.   Plaintiff Heidi LaMeyer is a resident of the State of Minnesota.  She has been an LPN since 1999.  Ms. LaMeyer was not informed in March of 2014, during the time of her

enrollment, that the average pass rate for the CPNE was less than 50% for the two prior years.

Had she known of the very low pass rate, she would not have enrolled with the Defendant.  The

Plaintiff was informed by Excelsior that the wait time for the CPNE was three months.  The

Plaintiff called "nearly daily to check on cancelations, to no avail." After incurring thousands of

dollars upon courses that will not transfer, the Plaintiff has now been informed that the wait time

is over 12 months.  The Plaintiff has informed Excelsior that she "is in line to become the

Director of Assisted Living" for a well-respected health care provider in Minnesota.  Excelsior

has been informed by Plaintiff's employer that "Heidi is in a position to earn an additional

$30,000 annually" in addition to a potential bonus.  Notwithstanding Plaintiff's repeated requests,

Excelsior has refused to honor its fraudulent representation to provide Plaintiff with a prompt test

date.   In fact, Excelsior has informed Plaintiff that she can expect delay beyond the one year.  In

addition to Plaintiff's financial losses, including the funds expended in connection with the

deceptive program, Ms. LaMeyer has also suffered emotional distress.

41.  Plaintiff Alice Crutcher is a resident of the State of Tennessee.  She has been in the

health care field for 30 years.  She enrolled with Excelsior in 2012, unaware that Excelsior's

CPNE pass rate was 46% or less.  Excelsior represented to Ms. Crutcher that she can complete

the nursing component of the program in as little as 18 months.  It actually took four years.

Excelsior also falsely represented that Plaintiff can expect to take the weekend clinical (the

CPNE) in 3-5 months from application.  The Plaintiff's wait time was actually 12 months.  The

Plaintiff would not have enrolled had she known of the low pass rate of 46% or less, or had she

known of the wait time.  After the long wait, Ms. Crutcher finally took the CPNE, and she was

alarmed by the subjective nature of the test.  She took the test in July of 2018 in Chambersburg,

Pennsylvania where Excelsior subjectively failed the Plaintiff using time-honored tactics such as

the time game and the identification game.  The "nationally-recognized" faculty-member never interacted with the Plaintiff, let alone provided her with the promised "clinical" instruction.  As a result of Excelsior's fraud and deception, the Plaintiff lost all of the thousands of dollars expended on Defendant's program.  She lost wages and suffered from emotional harm as a result of Excelsior's fraud.

42.   Plaintiff Marla Frank is a resident of the State of Montana.   She has been a paramedic since 2005.   The Plaintiff enrolled with Excelsior in September of 2012, after Excelsior represented that the nursing program accommodates consumers with experience in the medical field, that the program is self-paced and that the CPNE has a "three to five months waiting period."  Excelsior completely concealed from the Plaintiff that its pass rate for the final, mandatory, test is 46% or less.  Had the Plaintiff known that the wait period would end up being over one year and that the pass rate was so low, she would not have enrolled with the Defendant.  Ms. Frank received a job offer, conditioned upon her receiving the RN degree before August of 2017.   She lost that opportunity because of Excelsior's delays.   The Plaintiff has incurred $30,000 in loan indebtedness.  It took Excelsior 15 months to give Ms. Frank a test date, not three to five months as Excelsior falsely promised.  Excelsior completely failed to provide an "educational program" contrary to the false promised made.  As a result of Excelsior's fraud, the Plaintiff lost a job opportunity, lost wages and suffered emotional harm, in addition to the $30,000 she lost in connection with the deceptive program.

43.   Plaintiff Lisa Anderson is a resident of the State of Washington.  She has been an LPN since 2005.  At the time of her enrollment, Excelsior failed to inform the Plaintiff that the pass rate of the final test (the CPNE) was 48.5% in 2013 and 50.6% in 2014.  Had she known of the low pass rates, the Plaintiff would not have applied to Excelsior.   At the time of her

enrollment, the Plaintiff was informed that the wait time for taking the CPNE is three months. She was not aware that the actual wait time for taking the CPNE was 12 months in her case. The Defendant limited the number of courses Plaintiff can take per semester to two nursing courses so as to extend the length of the program. The Plaintiff was living in Montana at the time she enrolled with Excelsior in August of 2015. She moved to the State of Washington with her family of five in September of 2017. The Plaintiff discovered in July of 2018 that Washington State does not accept Excelsior as an accredited school. The Plaintiff contacted Excelsior, and the Defendant refused to assist her, stating that Ms. Anderson can take her NCLEX in Montana, meaning that the Plaintiff should return to that State. The Plaintiff completed her nursing courses and applied for the CPNE in December of 2017, only to find out that the wait period for taking the final test was 12 months. The Plaintiff also learned recently that Excelsior is not "fully" accredited, as Excelsior had represented, but that it was only accredited "with conditions" by ACEN. As a result of Defendant's actions, the Plaintiff suffered economic losses in the form of expenses paid in connection with the fraudulent program, lost wages on account of the delays, and future lost wages. The Plaintiff will have to repay over $24,000 in loans she took in connection with the Excelsior program. Ms. Anderson also suffered emotional harm as a result of Excelsior's fraud.

44. Plaintiff Meaghan Keenoy is a resident of the State of North Carolina. She has been an LPN for seven years. When Plaintiff enrolled with Excelsior in November of 2011, she was not aware that Excelsior had fraudulently manipulated the pass rate for the CPNE to make it appear high. This fact was concealed from the Plaintiff. Excelsior had represented to the Plaintiff that the wait time is three months, but the Plaintiff was forced to wait an entire year. The Plaintiff would not have enrolled into the deceptive program had she known of the pass rate

of the CPNE or the wait period for taking the test.  The Plaintiff applied to take the CPNE in August of 2016, and she was given different and conflicting dates about the wait time from Excelsior representatives.  The Plaintiff had been working 2 jobs, had a death in her family, was recovering from surgery and was planning a wedding.  Nonetheless, the Plaintiff continued to request a test date from Excelsior, opting for any cancelation date.  Excelsior gave the Plaintiff a cancelation date, after making her wait for a full year.    The Plaintiff took the CPNE in Queens, New York in August of 2017, and, like the overwhelming majority of consumers taking the CPNE, she was failed by Excelsior for the purpose of obtaining another test fee of $2,300.  The Plaintiff discovered that the test was not fair or objective as Excelsior represented, but it was a way for Excelsior to raise revenue.  One of the ways Excelsior raises revenue is to force consumers to take an information literacy course.  Ms. Keenoy was required to take this course, even though she possessed a Bachelor of Science degree from Wingate University.  The degree was in psychology, and the Plaintiff had taken 19 psychology courses.  Yet, Excelsior forced Plaintiff to pay for, and to take, a psychology course, for the sole purpose of profit.  As a result of Excelsior's fraud, the Plaintiff has lost thousands of dollars in funds paid directly to Excelsior, lost wages, and she has suffered emotionally as a result of the deceptive conduct.

45.  Plaintiff Joy Frisby is a resident of the State of Florida.  She has been an EMT since 2000, and she has been an LPN since 2011.  She enrolled with Excelsior in August 2012. Excelsior represented to Plaintiff that it was "fully" accredited.  It represented to Plaintiff that the CPNE was fair and objective.  It represented to Plaintiff that the nursing component of the program can be completed in 18 months, and that the CPNE can be scheduled in 3-5 months from becoming eligible.  The Plaintiff waited to take the second CPNE for over one year. Excelsior failed the Plaintiff using the patient identification method and the time method.

Excelsior completely hid from the Plaintiff the low pass rate for the CPNE. Had the Plaintiff known that the pass rate for the mandatory final exam was 46% or less, she would never have enrolled. Had the Plaintiff known that Excelsior misrepresented the wait time for taking the CPNE, she would also never have enrolled. As a result of Excelsior's scheme to defraud, Ms. Frisby lost over $13,500 paid directly to Excelsior and thousands more in connection with the deceptive program. The Plaintiff also suffered emotional distress as a result of Excelsior's action. She has lost and will continue to lose wages as a result of the delays and the misrepresentations of the Defendant.

46. Sarah Cornell is a resident of the State of Florida. She has been an LPN since 2015. The Plaintiff enrolled with Excelsior in April of 2015. During Plaintiff's enrollment time, Excelsior withheld from the Plaintiff information regarding the deceptive CPNE test. Specifically, Excelsior failed to inform the Plaintiff that the average pass rate for that final program test was less than 50% for the prior two years. Had Plaintiff been provided with this material information, she would not have enrolled with Excelsior. The Plaintiff was also never informed that the wait time would be 12 months. The Plaintiff was forced to go to a *bona fide* college, after learning of the fraud, after learning of the 12 months wait period, and after learning of the very low CPNE pass rate. The Plaintiff was surprised to learn that Excelsior's program was a scheme to defraud designed to make Excelsior funds whenever possible. By way of example, one of Excelsior's deceptive practices is to force consumers such as Ms. Cornell to take an "information literacy" class, which earns Excelsior $400.00. As a result of Excelsior's fraud, the Plaintiff lost close to $10,000 paid directly to the Excelsior program. She lost wages and she also suffered emotional harm as a result of Excelsior's fraudulent and deceptive conduct.

47. Plaintiff Marcia Connell is a resident of the State of Colorado.  She has been an LPN since 2008.  She enrolled with Defendant in January of 2015 after Excelsior represented that the Plaintiff can finish her nursing degree in less than 18 months.  Excelsior represented to Plaintiff that she would take the CPNE "three months after the completion of [her] courses."  The Defendant knew that it was making a false statement. Over time, Excelsior's representatives informed the Plaintiff that the wait time would be "7-12 months" and then "12-15 months."  The Plaintiff was also never informed that the average pass rate for the deceptive CPNE was less than 50%.  Had she known of the wait time, and the failure rate for the final test, she would never have enrolled with Excelsior.  The Plaintiff is close to 62 years old and plans to retire.  She had hoped that she could retire as an RN, but Excelsior's acknowledged fraud makes clear that the promise of an RN degree will not be fulfilled.  The Plaintiff lost significant funds on what is now clear is a "scheme-to-defraud."  The Plaintiff lost funds, which she directly paid to Excelsior and in connection with the program, lost wages, and she suffered humiliation and embarrassment on account of Excelsior's scheme to defraud.

48. Plaintiff Cynthia Charette is a resident of the State of Connecticut.  She became an LPN in 2005.  She enrolled with Excelsior in October of 2012.  Defendant failed to inform the Plaintiff that Excelsior had fraudulently manipulated the CPNE pass rate for the prior year. Excelsior informed the Plaintiff at the time of her enrollment that the wait time for taking the final test was not more than five months.  The Plaintiff waited to take the said test for a full year, and only because there was a cancelation.  The Plaintiff would not have wasted six years of her life, in addition to significant sums of money, had she known of the very low pass rate or the extensive wait time for taking the CPNE.  The Plaintiff took the test in June of 2018, in Queens, New York.  Out of six people who took the CPNE, including the Plaintiff, only two people

passed, at most.  The Plaintiff was not aware that Excelsior's accreditation was "with conditions." Excelsior also never informed the Plaintiff of the "conditions," which were placed on Excelsior's accreditation.  As a result of Excelsior's actions, the Plaintiff lost significant funds, including loans that exceed $20,000.  In addition, the Plaintiff lost wages and suffered severe emotional harm.

49.  None of the Plaintiffs would have enrolled with Excelsior had they known the truth about the low CPNE pass rates.  The Plaintiffs believe that pass rates are actually lower than the 46% reported by Excelsior.

50.  None of the Plaintiffs would have enrolled with Defendant had they known of the true CPNE wait time.  Excelsior's various officials have provided consumers with conflicting reasons for the lack of sufficient testing sites, and they have provided consumers with conflicting wait time periods to keep them enrolled.

51. This action is maintainable as a class action.  The Plaintiffs believe that the class they propose to represent is so numerous that joinder of all members is impracticable.  Although the Plaintiffs have not been provided with the records from the Defendant, hundreds, if not thousands, of students are/were impacted by Defendant's actions.  There are questions of law and fact common to the class, and the claims of the named Plaintiffs are typical of the claims of the class.  The Plaintiffs will fairly and adequately protect the interests of the class.

**Plaintiffs' Class**

52. The Plaintiffs seek to certify a class of all persons who were enrolled with Excelsior at anytime from August 13, 2012 through the date of certification and who were subjected to delay in taking the CPNE of five (5) months or longer and who took and failed the CPNE during the same period. The Plaintiffs reserve their right to amend the class definition set forth herein.

## COUNT ONE
### Fraud

53. The Plaintiffs reallege the allegations made above and in this Complaint and incorporate the same by reference as if fully set forth herein, and further state:

54. For that the Defendant Excelsior intentionally, willfully and maliciously withheld from the Plaintiffs material facts concerning the accreditation, CPNE pass rate, and the wait time for taking the final exam. The facts are and were withheld until Plaintiffs' resources have been depleted by Excelsior. Once the Plaintiffs are stuck in Defendant's program – and after having paid Excelsior thousands of dollars – Excelsior begins to inform the Plaintiff about the secretive CPNE, and it is only at this time that the Plaintiffs learn that they had been lied to with respect to the wait time. Specifically, after finishing the nursing courses, Excelsior begins to inform consumers that the wait time is 5-7 months, and then 12 months, and then 12-15 months.

55. Excelsior's President, James Baldwin, has finally admitted that Excelsior "knew there was a problem there, but there was a reluctance to lose the revenue."

56. Excelsior intentionally lies about the pass rates of the final test, which costs $2,300. To keep Plaintiffs enrolled and to keep them paying the various fees, Excelsior representatives misrepresent the pass rates to Plaintiffs.

57. Excelsior also omits material facts about its accreditation. It fails to inform consumers as a matter of course, and it failed to inform the Plaintiffs, that the accreditation is "with conditions." Some, if not all, of the conditions directly relate to the various failures of Excelsior, and some touch directly on the $2,300 test.

58. The omissions and the false statements are made with malice or its functional equivalent and they are made with the sole purpose that hardworking Plaintiffs with limited means, and those with various special circumstances, pay for Excelsior's courses, for the

workshops, for the deceptive CPNE and for all of the other fees associated with the fraudulent program.

59. The Plaintiffs reasonably relied upon Defendant's omissions and representations. Excelsior knows how to depict itself as a legitimate, *bona fide*, "educational" institution.

60. As a result of the omissions and representations, Plaintiffs suffered significant losses, including funds expended in registration and annual fees, late fees, course fees, testing fees, external testing fees, workshop fees, conference fees, travel expenses, and funds expended in relation to the deceptive program, and lost wages occasioned, in part, by waiting for months beyond the promised dates to take the CPNE.

**COUNT TWO**
**NYGBL §349 and §350, *ET SEQ.***
**Deceptive Or Misleading Practices**

61. The Plaintiffs reallege the allegations made above and in this Complaint and incorporate the same by reference as if fully set forth herein, and further state:

62. For that Excelsior engaged in conduct that was consumer oriented and did so in a manner, which was materially deceptive and misleading to consumers and this conduct caused Plaintiffs significant harm. Specifically, the Defendant made representations and omissions regarding its program, which was not educational, and regarding the CPNE test and the wait time for taking the CPNE, which is neither objective nor fair. Moreover, Excelsior fails to inform consumers that its program is flawed and fraudulent. Until recently, Excelsior refused to admit what Mr. Baldwin now admits: "[w]e knew there was a problem there, but there was a reluctance to lose the revenue."

63. The Defendant materially misled the Plaintiffs in the manner discussed above, including by failing to disclose information regarding its accreditation, the CPNE pass rates, the

wait time for taking the final test, any graduation rate, the methods of failure as fully discussed above, the lack of education, and the lack of transferability of credit to other institutions.

64.  As a result of the representations and omissions, Plaintiffs suffered significant losses, including funds expended in registration and annual fees, course fees, testing fees, including external testing fees, workshop fees, conference fees, travel expenses, funds expended in relation to the deceptive program, and lost wages occasioned, in part, by waiting for months beyond the promised dates to take the CPNE.

## COUNT THREE
### Breach of Contract

65. The Plaintiffs reallege the allegations made above and in this Complaint and incorporate the same by reference as if fully set forth herein, and further state:

66. The Defendant, at all the times relevant herein, was under an implied covenant of good faith and fair dealings, and Excelsior breached this covenant when it acted in bad faith and solely for the purpose of profit disregarding the financial and emotional costs incurred by the Plaintiffs.  Defendant's actions are also in direct breach of the false promises Excelsior made.

67. The Defendant accepted significant funds from Plaintiffs on the promises that it provide educational services, and Excelsior was under contractual obligations to provide the Plaintiffs with material information concerning the tests, including but not limited to: the wait time, the subjective nature of the test, the true annual pass/fail rate, and the non-transferability of the EC credits.  The Defendant failed in its obligation to provide Plaintiffs with this information.

68. The Defendant failed to deliver on its promise "to provide opportunities to *acquire the knowledge and skills* necessary to reach [a consumer]'s personal and nursing career goals." Excelsior's program is simply not educational.

69. The Defendant failed to deliver on its promise to allow the Plaintiffs to test within 3-5 months, as set forth above.

70. The Defendant, in accepting Plaintiffs' significant funds, was also under an obligation to administer its test fairly and objectively.  In fact, the Defendant specifically promised in its written representations that it guaranteed such fair and objective testing.  Defendant failed to administer the test "fairly and objectively." None of the Plaintiffs were adjudged fairly and based upon her/his knowledge.  Instead, the Defendant deviated from its "study guide" and its representatives looked for areas to fail the Plaintiffs so as to cause them to retake the examination, paying Excelsior an additional examination fee each time that they took the said test.

71. Excelsior represents to consumers and represented to the Plaintiffs that it provides an educational program.  The Defendant breached that promise when it utterly failed to provide an education to Plaintiffs other than a written manual and a test.

72. The Defendant fails and has failed to honor its promise that Plaintiffs would work with "nationally-recognized" faculty. The Defendant failed to provide the "personalized advising" promised. Further the Defendant fails and has failed to provide the instruction specific to Excelsior's testing demands that do not necessarily relate to the field of nursing.

73. Each of the Plaintiffs alleges that the Defendant administered the tests – consistent with Excelsior's significant conflict of pecuniary interest in the students' failures – in an unfair and subjective manner so that each and every Plaintiff who "failed" an Excelsior test, she/he was failed for reasons other than their knowledge and abilities.  The Plaintiffs who were failed will testify under oath, at the trial of the above-captioned matter, that they were failed for a

reason/reasons that were unjust, unfair, subjective and, at times, concocted, and this provides an additional and separate basis for Defendant's breach of contract.

74. As a result of Excelsior's breaches, Plaintiffs suffered significant losses including but not limited to lost wages and funds expended in relation to the deceptive program such as registration and annual fees, course fees, outside workshops, and testing fees.

### Prayers for Relief As to Both Counts

WHEREFORE, your Plaintiffs respectfully pray that this Honorable Court:

- Order that Excelsior pay the Plaintiffs punitive damages in the amount of $10,000,000, so that the deceptive practices can end once and for all;

- Order that the Defendant discontinue its violations of New York General Business Law §349, §350, *et. seq.*  FORTHWITH;

- Require the Defendant to **conspicuously** inform consumers that the TRUE wait time for taking the CPNE could exceed 18 months;

- Require the Defendant to disclose its TRUE pass/failure rate for the CPNE and for each of Excelsior's sites and for the entire RN program **annually**;

- Require the Defendant to **conspicuously** post its graduation rates;

- Require the Defendant to inform consumers that credits earned in its subject nursing program may not be transferrable;

- Order that the Defendant reimburse Plaintiffs for any and all application fees, registration fees paid, including but not limited to: enrollment fees, annual fees, external exam fees, for any workshops taken by Plaintiffs, and for any uniforms and equipment Plaintiffs purchased;

- Order that Defendant reimburse Plaintiffs for all of the CPNE fees and costs, including all travel and lodging expenses and all amounts paid to all workshops taken to prepare for the CPNE;

- Order that Defendant pay Plaintiffs for all of their emotional distress;

- Order that Defendant pay Plaintiffs for all of their lost wages;

- Require the Defendant to pay statutory fines, costs of suit, and attorneys' fees; and

- Grant your Plaintiffs any such other and further relief as to this Court may appear just and proper.

## **JURY TRIAL DEMAND**

The Plaintiffs respectfully request a jury trial on all of the factual and legal issues that

may be tried by a jury in the above-captioned action.

Respectfully Submitted,
THE PLAINTIFFS,

BY:      _____/s/_____

Their Counsel
John Hermina, Esq.
HERMINA LAW GROUP
Laurel Lakes Executive Park
8327 Cherry Lane
Laurel, Maryland 20707
law@herminalaw.com
Tel 301-776-2003


Gregory Allen, Esq.
Law Office of Gregory Allen
60 Joyce Court
Milford, CT 06461
greg@gjallenlaw.com
Tel 203-535-4636

Exhibit "1"

UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
-------------------------------------------------------------------X

SHEWANDA WILLIAMS, *et al.*,

                         Plaintiffs,

     - against -

EXCELSIOR COLLEGE,

                       Defendant.
-------------------------------------------------------------------X

Civil Action No. 17-6263(WFK)(RLM)

**DEFENDANT'S FIRST
AMENDED RESPONSE TO
PLAINTIFFS' FIRST SET OF
REQUESTS FOR ADMISSIONS**

Pursuant to Rules 26 and 36 of the Federal Rules of Civil Procedure, Defendant Excelsior College hereby responds to Plaintiffs' First Set of Requests for Admissions.

## OBJECTION TO THE "DEFINITIONS" PROVIDED BY PLANTIFFS

Defendant objects to the extent any terms listed under the "Definitions" heading in Plaintiffs' First Set of Requests for Admissions are defined more broadly therein than they are defined in the Federal Rules of Civil Procedure and/or Local Rule 26.3, and will construe any such terms in accordance with the Federal and Local Rules.

## RESPONSES TO REQUESTS FOR ADMISSIONS

**REQUEST NO. 1:** Admit that the attached **Exhibit 1** is a true depiction of your website entitled: Https://www.excelsior.edu/about/accreditations.

**OBJECTION AND RESPONSE TO REQUEST NO. 1:**  Defendant denies Request No. 1, except admits that Exhibit 1 appears to be a true depiction of a printed copy of the website entitled https://www.excelsior.edu/about/accreditations.

**REQUEST NO. 2:** Admit that Excelsior does not state on its webpage: https://www.excelsior.edu/about/accreditations that the ACEN accreditation is with "conditions."

1

5034700

**OBJECTION AND RESPONSE TO REQUEST NO. 2:** Defendant objects to Request No. 2 on the grounds that the Request and individual terms therein are vague and ambiguous insofar as they are capable of more than one construction, e.g.: (1) whether the webpage uses the word "conditions;" or, (2) whether the webpage otherwise describes some undefined requisite to ACEN accreditation to which plaintiffs refer as a "condition." Notwithstanding, and without waiving these objections, Defendant admits that the words "with conditions" do not on the page https://www.excelsior.edu/about/accreditations

**REQUEST NO. 3:** Admit that in 2013 Excelsior had and/or displayed the information shown on the attached **Exhibit 2** on the Excelsior website.

**OBJECTION AND RESPONSE TO REQUEST NO. 3:** Defendant denies Request No. 3, except admits that, upon information and belief, the substantive portions of Exhibit 2 – i.e., the legible content of Exhibit 2, excluding the docket information in the header and the sticker identifying the exhibit as "Plaintiff's Exhibit 10" – were displayed on the Excelsior College website in or around 2013.

**REQUEST NO. 4:** Admit that in 2014 Excelsior had and/or displayed the information shown on the attached **Exhibit 2** on the Excelsior website.

**OBJECTION AND RESPONSE TO REQUEST NO. 4:** Defendant denies Request No. 4, except admits that, upon information and belief, the substantive portions of Exhibit 2 – i.e., the legible content of Exhibit 2, excluding the docket information in the header and the sticker identifying the exhibit as "Plaintiff's Exhibit 10" – were displayed on the Excelsior College website in or around 2014.

**REQUEST NO. 5:** Admit that in 2013 the CPNE overall pass rate was not 65% or greater.

5034700

**OBJECTION AND RESPONSE TO REQUEST NO. 5:** Defendant objects to Request No. 5 on the grounds that the term "overall pass rate" is vague and ambiguous as used by Plaintiffs because it is capable of more than one construction, e.g.: (1) "overall" and/or "pass rate" could mean cumulative since the program's inception; or, (2) "overall" and/or "pass rate" could mean just for that year.   Notwithstanding and without waiving these objections, Defendant denies Request No. 5, except admits that the pass rate for all students who took the CPNE in 2013 was not 65% or greater.

**REQUEST NO. 6:**  Admit that in 2014 the CPNE overall pass rate was not 65% or greater.

**OBJECTION AND RESPONSE TO REQUEST NO. 6:** Defendant objects to Request No. 6 on the grounds that the term "overall pass rate" is vague and ambiguous as used by Plaintiffs because it is capable of more than one construction, e.g.: (1) "overall" and/or "pass rate" could mean cumulative since the program's inception; or, (2) "overall" and/or "pass rate" could mean just for that year. Notwithstanding and without waiving these defenses, Defendant denies Request No. 6, except admits that the pass rate for all students who took the CPNE in 2014 was not 65% or greater.

**REQUEST NO. 7:** Admit that in 2015 the CPNE pass rate was not 65% or greater.

**OBJECTION AND RESPONSE TO REQUEST NO. 7:**  Defendant objects to Request No. 7 to the extent the phrase "the CPNE pass rate" is capable of more than one construction and therefore vague and/or ambiguous, e.g.: (1) "the CPNE pass rate" could mean cumulative since the program's inception; or, (2) "the CPNE pass rate"" could mean just for that year. Notwithstanding, and without waiving these objections, Defendant denies Request No. 7, except admits that the pass rate for all students who took the CPNE in 2015 was not 65% or greater.

**REQUEST NO. 8:** Admit that in 2016 the CPNE pass rate was not 65% or greater.

5034700

**OBJECTION AND RESPONSE TO REQUEST NO. 8:** Defendant objects to Request No. 8 to the extent the phrase "the CPNE pass rate" is capable of more than one construction and therefore vague and/or ambiguous, e.g.: (1) "the CPNE pass rate" could mean cumulative since the program's inception; or, (2) "the CPNE pass rate"" could mean just for that year. Notwithstanding, and without waiving these objections, Defendant denies Request No. 8, except admits that the pass rate for all students who took the CPNE in 2016 was not 65% or greater.

**REQUEST NO. 9:** Admit that in 2017 the CPNE pass rate was not 65% or greater.

**OBJECTION AND RESPONSE TO REQUEST NO. 9:** Defendant objects to Request No. 9 to the extent the phrase "the CPNE pass rate" is capable of more than one construction and therefore vague and/or ambiguous, e.g.: (1) "the CPNE pass rate" could mean cumulative since the program's inception; or, (2) "the CPNE pass rate"" could mean just for that year. Notwithstanding, and without waiving these objections, Defendant denies Request No. 9, except admits that the pass rate for all students who took the CPNE in 2017 was not 65% or greater.

**REQUEST NO. 10:** Admit that the President of Excelsior, James Baldwin, gave an interview to the Nonprofit Quarterly ("NPQ") in an article published on or about May 17, 2018 and which article is attached hereto as **Exhibit 3.**

**OBJECTION AND RESPONSE TO REQUEST NO. 10:** Defendant denies Request No. 10.

**REQUEST NO. 11:** Admit that the quote James Baldwin gave to NPQ, as shown on **Exhibit 3**, that "We knew there was a problem there, but there was a reluctance to lose the revenue" was a true quotation.

**OBJECTION AND RESPONSE TO REQUEST NO. 11:** Defendant objects to request No. 11 on the grounds that "true" is vague and ambiguous as used insofar as it is capable of more than one relevant and logical interpretation, e.g., true meaning that the quotation was accurately

5034700

quoted vs. true meaning that the underlying statement was a factually true assertion. Notwithstanding these objections, Defendant denies Request No. 11, except admits that James Baldwin said the sentence: "[w]e knew there was a problem there, but there was a reluctance to lose the revenue."

**REQUEST NO. 12:** Admit that the quote James Baldwin gave to NPQ, as shown on **Exhibit 3**, that "We knew there was a problem there, but there was a reluctance to lose the revenue" was an accurate quotation.

**RESPONSE TO REQUEST NO. 12:**  Defendant objects to request No. 12 on the grounds that "accurate" is vague and ambiguous as used insofar as it is capable of more than one relevant and logical interpretation, e.g., accurate meaning that the quotation was accurately quoted vs. accurate meaning that the underlying statement was a factually accurate assertion. Notwithstanding these objections, Defendant denies Request No. 11, except admits that James Baldwin said the sentence: "[w]e knew there was a problem there, but there was a reluctance to lose the revenue."

**REQUEST NO. 13:** Admit that the quote James Baldwin gave to NPQ, as shown on **Exhibit 3**, that "We knew there was a problem there, but there was a reluctance to lose the revenue" was a quote actually made by Mr. James Baldwin.

**RESPONSE TO REQUEST NO. 13:**  Defendant denies Request No. 13, except admits that James Baldwin said the sentence: "[w]e knew there was a problem there, but there was a reluctance to lose the revenue."

**REQUEST NO. 14:** Admit that Diane L. Huber conducted a study known as the *White Paper* regarding the CPNE in 2009.

5

**RESPONSE TO REQUEST NO. 14:** Defendant denies Request No. 14, except admits, that a Diane L. Huber prepared a White Paper in 2009 regarding Clinical Education in Prelicensure Associate Degree in Nursing Programs, which includes references to Excelsior's Clinical Performance in Nursing Examination.

**REQUEST NO. 15:** Admit that Diane L. Huber's 2009 White Paper was paid for by Excelsior.

**RESPONSE TO REQUEST NO. 15:** Defendant denies Request No. 15, except admits that the study referenced in Defendant's Response to Request No. 14, *supra*, was prepared under contract with Excelsior College, which included payment from the College.

**REQUEST NO. 16:** Admit that Diane L. Huber has not conducted any studies or White Papers regarding the CPNE since 2009.

**RESPONSE TO REQUEST NO. 16:** Defendant denies Request No. 16, except admits that upon information and belief, Ms. Huber has not conducted any studies at the direction of Excelsior College and regarding any aspect of the ADN program since preparing the 2009 White Paper referenced in Defendant's Response to Request No. 14, *supra*.

**REQUEST NO. 17:** Admit that Excelsior College has never posted a graduation rate for its ADN program.

**RESPONSE TO REQUEST NO. 17:** Defendant objects to Request No. 17 on the grounds the word "posted" is vague and ambiguous as used, as it is capable of more than one relevant construction, .e.g., "posted" meaning published on a publicly accessible website vs. posted internally on a bulletin board vs. published on hard-copy materials. Defendant further objects to Request No. 17 on the grounds that it is unlimited in time and scope, and after a reasonable search, Excelsior College is unable to determine if the College has ever posted the graduation

6

rate for the ADN Program in the last approximately forty (40) years since the Program's inception. Accordingly, Defendant is unable to admit or deny Request No. 17.

**REQUEST NO. 18:** Admit that you made this quoted statement on your website that "Between Fiscal Years 2013 and 2017 (July 2012 – June 2017), a total of 6,640 individual students attempted the CPNE and 62.2% passed the CPNE by June 30, 2017."

**RESPONSE TO REQUEST NO. 18:** Defendant can neither admit nor deny Request No. 18, because, following diligent inquiries, the website and data has undergone numerous iterations and therefore Defendant cannot, at this time, definitively state whether or not that language has ever appeared on its website. Notwithstanding, Defendant is continuing its search to confirm whether or not this language has ever appeared on its website, and will supplement this response accordingly should it obtain a definitive answer.

**REQUEST NO. 19:** Admit that Excelsior did not achieve an annual CPNE pass rate of 62.2% for each separate year from 2013 through 2017.

**RESPONSE TO REQUEST NO. 19:** Defendant objects to Request No. 19 to the extent "achieve" erroneously implies that 62.2% was a required pass rate, threshold, or otherwise. Defendant further objects to Request No. 19 on the grounds that it appears that Excelsior, and not its students, were taking the CPNE. Notwithstanding, and without waiving or otherwise limiting this objection, Defendant denies Request No. 19, except admits that the following table reflecting the CPNE pass rate for each separate year during the period 2013 -2017 is accurate:

| Calendar Year | CPNE registrations | Grade | | | Pass rate |
|---|---|---|---|---|---|
| | | Fail | Repeat | Pass | |
| 2013 | 2,002 | 995 | 36 | 971 | 48.5% |
| 2014 | 1,864 | 897 | 23 | 944 | 50.6% |
| 2015 | 1,606 | 879 | 21 | 706 | 44.0% |
| 2016 | 1,655 | 824 | 24 | 807 | 48.8% |
| 2017 | 1,568 | 895 | 54 | 619 | 39.5% |

5034700

**REQUEST NO. 20:** Admit that changing the Study Guide from the 21st Edition to the 22nd Edition required CPNE takers to acquire new and additional knowledge necessary for taking the test.

**RESPONSE TO REQUEST NO. 20:** Defendant objects to Request No. 20 on the grounds that it calls for Defendant to both generalize and speculate as to the knowledge of each and all individual CPNE test-takers.  Therefore, Defendant is not able to admit or deny Request No. 20.

**REQUEST NO. 21:** Admit that Excelsior has had difficulty in procuring and maintaining a sufficient number of sites for the taking of the CPNE.

**RESPONSE TO REQUEST NO. 21:** Defendant objects to Request No. 21, on the grounds that "difficulty" and "sufficient" are vague and ambiguous insofar as each is a subjective and inadequate descriptor of processes and requirements that are fluid, complex, and with a multitude of variables outside of Defendant's control that vary significantly not only between different sites and potential sites, but also within the same site at different timeframes, staffing levels, patient occupancies, faculty availability, and student availability.  The complexity of these factors is exponentially increased by variable numbers of other educational programs competing for similar resources at any given site and also facing comparably complex and variable circumstances.  Accordingly, Defendant can neither admit nor deny Request No. 21.

**REQUEST NO. 22:** Admit that the attached **Exhibit 4** contains page 9 of, or a page from, the Excelsior 2016-2017 Annual Report.

**RESPONSE TO REQUEST NO. 22:** Defendant objects to Request No. 22 on the grounds that the copy of Exhibit 4 provided to Defendant is not legible.  Without waiving the foregoing objection, Defendant denies Request No. 22, except admits that Exhibit 4 attached to Plaintiff's

8

S034700

First Requests for Admission appears to include: (1) the cover page from Excelsior College's 2016-2017 Annual Report; (2) and page 9 of Excelsior College's 2016-2017 Annual Report.

**REQUEST NO. 23:** Admit that the number of students enrolled in Excelsior's ADN program in 2017 exceeded 10,000.

**RESPONSE TO REQUEST NO. 23:** Defendant objects Request No. 23 on the grounds that the term "enrolled" is vague and ambiguous as used by Plaintiffs insofar as it is capable of more than one construction, e.g., new enrollments (class of 2017, for example) vs. all students presently enrolled in classes and programs.  Notwithstanding, and without waiving or otherwise limiting these objections, Defendant denies Request No. 23, except admits that in 2017, the total number of students enrolled in Excelsior's ADN program was over 10,000.

5034700

**REQUEST NO. 24:** Admit that less than 1,000 students graduated from Excelsior's ADN program in 2017.

**RESPONSE TO REQUEST NO. 24:** Defendant admits Request No. 24.

Dated: New York, New York
          July 19, 2018

                                        Very truly yours,

                                        KAUFMAN BORGEEST & RYAN LLP

                                        By: _____
                                             Laura B. Juffa
                                             Evelyn E. Dormer
                                             Daniel H. Oliner
                                             *Attorneys for Defendant*
                                             EXCELSIOR COLLEGE
                                             120 Broadway, 14th Floor
                                             New York, New York 10271
                                             Telephone: (212) 980-9600
                                             Facsimile: (212) 980-9291
                                             Email: ljuffa@kbrlaw.com

To:     (*via E-Mail*)

        John Hermina, Esq.
        *Attorney for Plaintiffs*
        Laurel Lakes Executive Park
        8327 Cherry Lane
        Laurel, Maryland 20707
        Telephone: (301) 776-2003
        Fax (301) 490-7913
        j@herminalaw.com

        Gregory Allen, Esq.
        Law Office of Gregory Allen
        *Attorneys for Plaintiffs*
        120 W. Wilson Avenue
        Glendale, CA 91203
        Telephone: (203) 535-4636
        greg@gjallenlaw.com

5034700